**In the Matter of Louis Joseph JAY, Bankrupt.**

**Joseph M. ARRA, Trustee, Plaintiff,**

v.

**ATLANTIC NATIONAL BANK OF SEMINOLE, Defendant.**

**Bankruptcy No. 78–525 Orl P.**

United States District Court,
M. D. Florida,
Orlando Division.

Jan. 22, 1981.

Morton Kosto, Orlando, Fla., for plaintiff.

Edward A. Marod, Orlando, Fla., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a complaint to recover property of the estate

filed by Joseph M. Arra, the Trustee. The property in question is 3,350 shares of Riehl Electronics Corporation stock that is presently held by the Atlantic National Bank of Seminole (Atlantic). The Trustee bases its recovery right on § 70(c) of the Bankruptcy Act of 1898 as amended which gives the Trustee the status of an ideal or imaginary creditor holding a judgment that is unsatisfied and thereby gives the Trustee the power to defeat unperfected and improperly perfected security interests claimed by third parties in properties of the estate.

The facts which are germane to this controversy are for the most part in dispute, but can be summarized as follows:

On March 25, 1976, Louis Joseph Jay (the Bankrupt) executed a promissory note in face amount of $32,500 in favor of Atlantic (Pl's. Exh. # 1). On or about that same date, the Bankrupt delivered eight stock certificates representing the Bankrupt's record ownership of 3,350 shares of Riehl Electronic Corporation stock to Atlantic (Def.'s Exh. # 2). Atlantic placed the certificates in one of its collateral vaults together with two unexecuted pink sheets of paper entitled "collateral withdrawn" (Def's. Exh. # 7). Those receipts, which were stored, were only to be signed by the Bankrupt if and when he retired the obligation or gave new collateral. Listed on the collateral withdrawn receipts is a description of each of the eight stock certificates.

The record further reveals that no written security agreement was ever entered into between the Bankrupt and Atlantic with respect to the shares of stock. Mr. Long as vice president of Atlantic, did however, prepare a memorandum of the loan transaction in the ordinary course of business shortly after the transaction was closed (Def's. Exh. # 3). That memorandum refers to the 3,350 shares of Riehl Electronic Corporation stock as having a value of $16,750 and as partially securing the $32,500 note given by the Bankrupt.

In addition, the record reveals that Atlantic renewed the note on nine separate occasions between March 25, 1976 and August of 1977 and recorded a loan history statement (Pl's. Exh. # 3). The loan history statement, however, does not describe any collateral in the column provided for that purpose on the statement.

It further appears that on at least one occasion Atlantic responded by letter to a Federal Savings and Loan Association and referred to its transaction with the Bankrupt as an "unsecured" obligation in the medium five figures (Pl's. Exh. # 4). The record also reveals however, that the Bankrupt's schedules, of which this Court takes judicial notice, refer to the obligation as secured by the stock certificates involved in this controversy.

The Trustee contends that although Florida law recognizes the validity of oral security agreements in cases where the secured party has possession of the collateral, Atlantic has failed to sustain its burden of proof to establish that an oral security agreement ever existed. This is so, because the Bankrupt was not available to testify concerning the "alleged" pledge of stock and, therefore, the agreement could only be proven circumstantially which according to the Trustee has not been done.

The Trustee points out that in sophisticated commercial transactions, such as in the present instance, it is highly unusual for a lending institution not to require a written security agreement as a condition precedent to granting a loan. The Trustee further contends that there is no evidence of what the terms of the oral agreement would be if one existed, i. e., what the security is, what constitutes default; what occurs on default; what notice of default is required; or how the collateral may be sold or transferred.

In addition, contends the Trustee, there is evidence in this record that on several occasions the note in question was referred to by Atlantic's own personnel as an unsecured note and that should be treated as an admission against interest that the loan was never intended to be made on a secured basis.

Finally, the Trustee contends that inasmuch as the stock certificates were never

endorsed by the Bankrupt, no transfer of the stock under Fla.Stat. § 678.101 et seq. (1975) ever occurred. The fact that there are eight "assignments separate from certificate" (Def's. Exh. # 1) is insufficient, according to the Trustee, to satisfy the transfer requirements of the Statute because although each assignment is signed, there is no reference by I. D. number, particular type of stock, or the number of shares of stock being transferred.

Thus, the Trustee contends that even assuming an oral security agreement would be proper in instances where the collateral is capable of perfection by possession, there is insufficient proof presented in this record to establish such an oral agreement or that a completed transfer of stock ever occurred as required by law. Therefore, the Trustee, possessing the power under § 70(c) of the Bankruptcy Act as an ideal, imaginary creditor who has a judgment unsatisfied should be entitled to recover the shares of stock from Atlantic who does not have a properly perfected security interest in property of the estate with the provision that Atlantic should only be permitted to share in the estate as an unsecured creditor to the extent of its claim.

In opposition, Atlantic contends that it has carried its burden of establishing the necessary security agreement, which under Fla.Stat. § 679.201 (1975) may be oral when the collateral is capable of and is perfected by possession as in the case of instruments such as stock certificates. Fla.Stat. § 679.-105(g) (1975). Atlantic contends that Mr. Long's memorandum which he prepared shortly after the loan transaction was closed with the Bankrupt and which refers to # 3,350 shares of Riehl Electronic Corporation stock as collateral for the partially secured loan to the Bankrupt is controlling. In addition, Atlantic points out that the Bankrupt's own schedules refer to the loan as secured by the 3,350 shares of stock of Riehl Electronic Corporation.

In support of its contention, Atlantic points out pertinent portions of testimony of Clyde C. Long, Jr. and Allen Harvell who served as Vice Presidents of Atlantic at different times during the period relevant to this matter.

According to Atlantic, it was customary for the Bank to use simple promissory notes in instances in which the loans were either unsecured or partially secured. Collateral notes and hypothecation agreements were generally used only in instances when in the loan officer's discretion a loan was fully secured by collateral.

Atlantic contends that the failure to list and describe the collateral security for the Bankrupt's loan on the loan history sheet was simply a bank error. Atlantic acknowledges that the note in question was referred to as unsecured in a response letter to the Savings and Loan, but urges the Court to find that it was merely unsolicited information given by an employee of Atlantic who was to a certain extent, unfamiliar with the facts of the loan transaction.

In light of the foregoing, this Court is satisfied that an oral security agreement did exist and the Trustee is not entitled to recover the shares of stock under § 70(c) for the following reasons:

■ Florida permits oral security agreements in situations where collateral is pledged, Fla.Stat. § 679.201 (1975), as in the case of certificates of stock which are instruments within the meaning of Fla.Stat. § 679.105(1)(g) (1975) and in which a security interest may only be perfected by possession. Fla.Stat. § 679.305 (1975).

■ Although the record is replete with conflicting evidence, viewing this record as a whole, this Court is satisfied that the unusual business practices of Atlantic are capable of reasonable explanation. Thus, this Court is satisfied that on March 26, 1976, the Bankrupt agreed to, and did, transfer to Atlantic eight certificates of stock and eight "assignment[s] separate from certificate" which the Bankrupt endorsed in blank, as collateral for the $32,500 note.

The record reveals that the Bankrupt's own schedules refer to the obligation as secured and the Riehl Electronic Corporation stock is the security for that obligation.

In addition, the back up memorandum prepared by Mr. Long states that $16,750 worth of Riehl Corporation stocks were given as collateral to partially secure the $32,500 note.

Admittedly, discrepancies exist in this record, particularly the express and implied references Atlantic made to an unsecured note, i. e., the blanks on the loan history sheet; the response letter by Atlantic to the Savings and Loan; the fact that a promissory note rather than a collateral note was used. Although the discrepancies might tend to show that Atlantic engaged in some unorthodox banking practices, such practices are not totally inconsistent with normal banking practices and do not outweigh the affirmative proof of an oral security agreement provided in this record by Atlantic.

A separate final judgment will be entered in accordance with the foregoing.